Jenkins et al. vs. Tobin et al.

---

## JENKINS et al. vs. TOBIN et al.

1. DEPOSITION: *Authentication, etc.*
   Where depositions are taken before a justice of the peace in another State a certificate of authentication of his official character should accompany the deposition.

2. EVIDENCE: *Burden of proof under issue of devisavit vel non.*
   Under the issue of *devisavit vel non,* where the inquiry is whether the testator was of sound and disposing mind, and free from undue influence, at the time of executing the will, the burden of proof is on the plaintiff.

3. DEVISAVIT VEL NON: *Evidence, etc.*
   An instruction to the following effect held correct under an issue of *devisavit vel non*: Evidence that the testator was weak and imbecile from age and disease to the extent that he was incapable of attending to his ordinary business, and in that condition was induced to abandon attorneys previously employed by him, that the will was written by the attorney of the principal devisee, and witnessed by said attorney, and the wife, and a relative of said devisee when other disinterested parties were near and could have been conveniently called to witness it, may be considered by the jury in determining whether the will was obtained by undue influence or not.

4. ————: *Same. Instruction upon.*

> An instruction under an issue of *devisavit vel non* which coupled together a number of circumstances having a bearing on the capacity of the testator at the time of making the will, and announced that they were all strong circumstances to disprove capacity, was erroneous; the circumstances being admitted, their weight should have been left to the jury.

> (For various circumstances admissible under the issue of *devisavit vel non*, as bearing upon the capacity and ¦freedom of will of a testator, see the opinion.)

APPEAL from *Desha* Circuit Court.

Hon. L. A. PINDALL, Special Judge.

*Carlton* and *Bell,* for appellants.

*Carroll & Jones,* and *Garland, contra.*

WALKER, J.:

This case was brought before us upon appeal, and was decided at the November term, 1874, reported in 29 vol. Ark. Rep., p. 151.

By reference to the decision then made, the facts will be found fully set forth, and several of the questions now presented for consideration settled.

The judgment of the court was set aside and the cause remanded to be tried anew. There was a change of venue from Jefferson to Desha County, where a trial was had and a verdict rendered in favor of the plaintiffs, upon which judgment was rendered in their favor; defendants moved for a new trial, which was overruled, exceptions taken, and the case again brought before us for consideration.

It is first objected that the court erred in overruling defendants' motion to dismiss the suit for want of jurisdiction.

Suit was brought in the Circuit Court on the 21st of July, 1871, after the Code practice went into effect, under which the remedy was by appeal from the judgment of the Probate Court, before which the will was probated.

The prayer of the petition was, that an issue be formed to be tried by a jury, as to whether the instrument probated, was or

not the will of Nathan Jenkins; the will was probated on the 6th November, 1868, at which time the right to proceed by petition to test the validity of the will was given, and although the petition was filed after the Code practice was declared to be in force, suit was brought within the time given by the statute after the will was probated, to file such petition.

Numerous authorities have been cited by appellant's counsel to show that, after the Code practice went in force, the Circuit Court had jurisdiction no longer by petition, but we need not consider them, because the same question was heretofore presented and disposed of when the case was submitted for our consideration, at the November term, 1874, and for that reason was properly overruled by the court below.

The second ground of objection is, that the court erred in suppressing the deposition of Laura B. Cooper. The deposition was taken before a justice of the peace, in the State of Pennsylvania, and was suppressed because there was no certificate of authentication, showing that the person who took the deposition and styled himself justice of the peace, was in fact such.

Defendant's counsel concede that the objection would be good but for an agreement by counsel, under which the deposition was taken. It seems to have been agreed by the counsel on both sides that depositions might be taken between certain hours at a day and place therein named without a commission, before any officer qualified by law to take the same, reserving all questions of relevancy and competency.

Defendants' counsel contend that, as the relevancy and competency of the evidence was alone reserved, all other irregularities were waived.

Such, we think, was not the effect of the agreement. The necessity of taking the depositions by commission was waived, and time, place and a qualified officer were agreed upon, but certainly it could not have been intended by the parties, that proof

of the qualification of the officer who took the deposition, should be dispensed with. The depositions were to be taken before one qualified by law to take them; the fact that he subscribed himself an officer was no evidence that he was such, and because there was no certificate showing that he was an officer, the depositions were properly suppressed.

The third exception taken by the appellant was the giving of the following instruction by the court in lieu of the plaintiff's first instruction: "A devise is the direction of a testator of sound mind as to the disposition of his property after his death, and before a will can be established upon an issue of *devisavit vel non*, it must be made to appear to the satisfaction of a jury that the testator was twenty-one years old and of sound mind; these facts must be established to the satisfaction of the jury from the proofs in the case by the party seeking to establish the will unless it sufficiently appears from the evidence by the plaintiffs."

This instruction was clearly erroneous; whatever may have been the decision of other courts, this court has so repeatedly held that a party who seeks to set aside a will which has once been established in the Probate Court, upon an allegation that from mental incapacity or from other sufficient cause, the will is invalid, assumes the affirmative, and is entitled to conclude the argument before the jury, leaves it no longer an open question. *Rogers* v. *Diamond*, 13 Ark., 479; *McDaniel* v. *Crosby et al.*, 19 Ark., 533, and in our former decision on this case, 29 Ark., 151.

The questions at issue were narrowed to an inquiry as to whether the testator was or not of sound and disposing mind and memory, and free from influence at the time he executed the will; questions which the plaintiff assumed to prove, and which the court, by its instructions, wrongfully imposed upon the defendant.

If the burden of proof devolved upon the defendants, as held by the court, then certainly they were entitled to conclude the

argument; but as such was not the case, it was not error to permit the plaintiff to conclude, so expressly held in this case when heretofore presented.

The court gave the sixth instruction of plaintiffs over defendants' objection, which is as follows: "If the jury believe, from the evidence in the cause, that Nathan Jenkins was weak and imbecile in mind from old age and disease, so much so that he was incapable of attending to his ordinary business affairs, and that, whilst he was in this condition, he was induced to abandon the attorneys who had previously attended to his business affairs, and that the attorney of William H. Jenkins, who was the principal devisee under the will now in contest, was called in to write said will, and that said will was attested only by said attorney of William H. Jenkins and his wife, and E. L. Colburn, who was the relative of William H. Jenkins, when other parties not interested in said will were about the place, and could have been conveniently called to have witnessed the same, this may be taken into consideration by the jury as a circumstance to determine whether said will was obtained by undue influence or not."

We think this instruction properly given, and is fully sustained by our previous decision in this case.

The remaining objection is to the giving of the eleventh instruction asked by the plaintiff, which is:

"That if the jury find, from the evidence, that, at the time of making the will, the testator was possessed of a large amount of real and personal property, of the value of $15,000 or $20,000, and that in this will he gave all of his large estate to his two sons and their wives, and made no provision for the children of his deceased daughters, Margaret Tobin and Nancy Barnes, for the reason that the testator had, before the date of making said will, given to his two daughters property and effects more in value than the estate he was then bequeathing to his two sons

and their wives ; and they should further find that said testator had not given to his two daughters property equal in value to the estate bequeathed in his will, but, on the contrary, had given to his daughters only a small amount in value in comparison to the property bequeathed in the will, say not more than one-tenth part in value ; and should further find that the testator, at the time of making his will, was about eighty years old, and in feeble health, and that said sons and their wives were present at the making of said will, and that the children of his two daughters were absent ; and further that one of said sons went after the attorney who drafted the will, and that E. L. Colburn was a brother-in-law of said William H. Jenkins, and living on the place at the time, and was called to be one of the witnesses to said will, while there were other persons on the place and in the vicinity, no way connected or akin to the two sons and their wives, who could have been called to witness said will, these would all be strong circumstances, which would go to establish that, either at the time the will was made, the testator was laboring under undue influences, or that he was not of sound mind and disposing memory."

The facts and circumstances, if given in evidence, might well have all been considered by the jury as tending to prove an undue influence, or an incapacity of the testator to make the will at the time it was made, and perhaps all of them taken together might be called " strong," but we think the court erred in instructing that all the circumstances were strong.

The admissibility of circumstantial evidence tending to prove a fact, even when weak and remote, is still admissible as evidence ; but, when collected and considered together, they may become as strong and convincing to the mind, of the existence of the fact intended to be proven, as direct evidence would ; and it should be remembered that proof of sanity, or insanity, mind,

Jenkins et al. vs. Tobin et al.

or lack of mind, are most frequently to be determined by circumstantial evidence.

The court should have reformed this instruction, so as not to leave an impression upon the jury that the circumstances were "all strong," but to have left it to the jury, who were instructed to receive them as evidence, to weigh them in connection with all other circumstances in relation to the same matter, and to determine, upon due consideration, whether, taken together, they were sufficiently strong to enable them to reach the conclusion that the testator, at the time he made the will, was induced to do so by such undue influences as were held to be sufficient, in the the opinion previously delivered in this case, or was not of sound and disposing mind at the time the will was executed.

Because, if they should find the one, or the other, or both propositions to be true, then they should find the issue for the plaintiff.

The first instruction asked by the defendant, and refused to be given by the court, has already been disposed of.

The eleventh instruction asked for by the defendant, and refused by the court, is as follows:

"If the jury believe, from the evidence, that Nathan Jenkins, in making a will in 1862, made, substantially, the same statements as to the advances made to his elder children, as were made in the will in question, and that his sanity or capacity was not questioned at the time of making the will in 1862; and they further believe that Nathan Jenkins was a man of truth and veracity, they may take these circumstances into consideration in forming their opinion as to the capacity of the testator, and the alleged undue influence, and are the judges of the means and information of said Nathan Jenkins, and the other witnesses on the facts of these advances."

If, in truth, the first will was made at a time when the testator was of sound mind, and he did make, substantially, the same

statements therein as to the advancements made to his children, as was made in the last will, which is assumed to have been made when of unsound mind, the recitals in the first will were proper evidence to go to the jury, as tending to show that the testator was in disposing mind and memory when he made the last will. Such conclusion, however, is not to be drawn from the recitals in one clause of the will, but all of its provisions must be considered together, and, although there may be a different disposition of the testator's property in the last from that made in the first will, this circumstance alone may be entitled to but little consideration ; it is often necessary and proper that such changes in the last will be made as the changed circumstances of the testator, or of his devisees, may render just and proper, and such changes may be explained or accounted for, or the reverse, by parol evidence ; but if the reasons and inducements for making certain changes in the disposition of the testator's property in the first will, made when he is shown to be of sound and disposing mind, are given, and a certain disposition of his property made in accordance therewith, and, in the last will, different reasons are assigned for a disposition of the same property, or a different disposition of the property itself, then it would be a question whether the recitals in the first will would not lessen, rather than increase the probability, that the testator was of sound and disposing mind when the last will was made.

The question as to whether the testator was a man of truth or not, was not properly a question to be submitted to the jury under the issue formed ; it could have no reference to the capacity, or state of mind of the testator. With this qualification we think the instruction should have been given.

The objection, that the jury found contrary to the evidence, will not be considered, because, from the view which we take of the case, it must be remanded for a new trial, and we prefer

to express no further opinion as regards the weight of the evidence, or its sufficiency to entitle the plaintiffs to recover, than that, if this was the only question to be considered, we would not, for that reason, set aside the verdict; nor do we deem it necessary or proper to go at length into the reasons by which we arrive at our conclusions upon the material points discussed, because they were fully considered in our former opinion.

It is to be regretted that, for a single misapprehension of the court below, as to what our decision was upon the question as to whether the plaintiffs or defendants should assume the affirmative, should have induced the court to hold that the affirmative was upon the defendants, and, at the same time, denied them the right of conclusion before the jury. This decision was materially prejudicial to the rights of the defendants. To what extent it influenced the verdict of the jury, we are unable to say, but must hold it to be an error, for which the judgment must be set aside and a new trial awarded, and the cause remanded for further proceedings according to law, and not inconsistent with this opinion.