HAMILTON *v.* HAMILTON.

Opinion delivered November 5, 1928.

*W. R. Donham* and *Morris & Barron,* for appellant.

*Creed Caldwell* and *Chas. A. Walls,* for appellee.

HUMPHREYS, J. The circuit court of Lonoke County adjudged, on appeal from the probate court, admitting a written instrument to probate, dated November 17, 1926, as the last will and testament of Fannie Nobles, deceased, that said instrument was her last will and testament. From the verdict and judgment of the circuit court finding said instrument to be the last will and testament of Fannie Nobles, deceased, appellants, heirs at law of the deceased and contestants of the will, have duly prosecuted an appeal to this court.

Appellee, a nephew of the deceased, to whom she bequeathed the bulk of her estate, was the proponent of the will.

There were no written pleadings filed either in the probate court or in the circuit court on appeal, so appellants maintain that the cause proceeded to a trial on the general issue of will or no will, in accordance with § 10525 of Crawford & Moses' Digest, which reads in part as follows:

"When the proceeding is taken to the circuit court, all necessary parties shall be brought before the court, and, upon the demand of any of them, a jury shall be impaneled to try which or how much of any testamentary paper produced is or is not the last will of the testator."

Appellee maintains that the only issue presented by the testimony was whether the will was genuine or a forgery.

The testimony introduced by appellants tended to show that the will was a forgery. The expert witnesses introduced by them, when shown the genuine signatures of the testatrix and C. M. Acklin, one of the attesting witnesses, testified that, in their opinion, the signatures of both were traced forgeries. The whereabouts of C. M. Acklin between November 10, 1926, until his death in February, 1927, was accounted for by the testimony of relatives and acquaintances, and, according to their testimony, he was not at the home of the testatrix in England during the time and was not physically able to have ridden in an automobile from Humphrey to England and back at any time between those dates to attest the will. There were many circumstances in the case tending strongly to support the alleged forgery of the will.

The testimony introduced by appellee tended to show that the will was duly executed on or about the 28th day of November, 1926, by the testatrix, at her home in England. Expert witnesses introduced by appellee, when shown the genuine signatures of the testatrix and

Acklin on other papers, testified that, in their opinion, their signatures to the will were genuine, and not forgeries. Appellee and E. M. Harrington, one of the attesting witnesses to the will, testified that, in company with C. M. Acklin, they drove from Humphrey to England, by way of Stuttgart, and stopped at the home of the testatrix in the town of England, and witnessed the execution of the will, and then returned, reaching Humphrey about 2 o'clock in the afternoon. Appellee thought the will was executed about the 28th of November, and Harrington thought it was executed some time in November, 1926. The will on its face shows that it was executed on the 17th day of November, 1926, according to all of the statutory requirements, and both appellee and Harrington testified that it was. There are a number of circumstances in the record tending to support the testimony of appellee and Harrington to the effect that the signatures to the will were genuine. There is no testimony in the record tending to show that the will was not executed in accordance with all statutory requirements, except the testimony tending to show that the signatures of the testatrix and C. M. Acklin were forged.

Appellants contend for a reversal of the judgment on the ground that the evidence is insufficient to support the verdict. Appellants argue that the witnesses introduced by appellee should not be credited or any weight attached to their evidence on account of contradictory statements made by some, the unreasonable story of others, and the certain and complete alibi established for C. M. Acklin at the time the will was executed.

We cannot concur in the interpretation placed by appellants upon the testimony introduced by appellee. The testimony introduced by him is not entirely unbelievable. The character of his witnesses was not assailed. Witness Harrington, one of the attesting witnesses, gave positive testimony to the effect that he was present when

the will was executed, and that he saw the testatrix sign the will, and saw Acklin sign same as an attesting witness, and that he signed it himself; that they all signed it in the presence of each other, and that he and Acklin signed it at the request of the testatrix. This witness was not impeached, and, as far as the record discloses, he had no interest whatever in the matter. Appellee corroborates his testimony in every particular, and there are other circumstances to support the testimony of both. One of the strong circumstances was that appellee had lived with the testatrix and her husband on their farm for about eight years, coming to their home when he was fifteen years old and remaining with them until he enlisted in the World War. This will was in tenor and effect like one the testatrix had theretofore made. The credibility of witnesses and the weight to be attached to their testimony are questions for juries, and not for courts. Courts will not invade the province of juries and pass upon the credibility of witnesses and the weight of their testimony, unless wholly and entirely unbelievable. There is substantial testimony in the record supporting the verdict of the jury in the instant case.

Appellants also contend for a reversal of the judgment upon the ground that, at the request of appellee, the court eliminated the issue of whether the will was executed according to statutory requirements by giving instruction No. 8, which reads as follows:

"Gentlemen of the jury, the plaintiffs, W. T. Hamilton *et al.*, are contesting the will in controversy upon the sole ground that the two signatures to the will are a forgery. There are no other issues for you to decide in this case. Therefore, if you find from the evidence in this case that the will in fact was executed by Fannie Nobles, and that the signatures attached thereto are the signatures of Fannie Nobles, deceased, and C. M. Acklin, then your verdict in this case will be for the contestee, W. E. Hamilton."

This instruction did send the case to the jury upon the sole issue of whether the signatures of the testatrix and the attesting witness, C. M. Acklin, were forgeries or genuine signatures; but the instruction was responsive to the issue joined by the evidence. It is true that the court instructed, at appellants' request, upon both issues of whether the signatures were forgeries and whether the will was executed in accordance with statutory requirements, but the latter issue was abstract, and more favorable to that extent to appellants than they were entitled to. Instruction No. 8, which correctly submitted the only issue made by the evidence, conflicted with the instructions given at appellants' request, submitting both issues, but the conflict related to an issue not in the case, and was not therefore prejudicial.

That part of the instructions requested by appellants and given by the court, submitting the issue of forgery to the jury, did not conflict with instruction No. 8, given at the request of appellee. If appellants had introduced any evidence tending to show that the will was not executed in accordance with the statutory requirements, other than the evidence tending to establish that the signatures were forged, then it would have been proper to have submitted that issue to the jury, but, not having done so, the submission of that issue at appellants' request was abstract, and in no sense prejudicial to them.

Appellants also contend for a reversal of the judgment because the court gave appellee's requested instruction No. 7, on the ground that it was incomplete in failing to tell the jury that a will must be attested at the request of the testator. This is a statutory requirement, but the testimony did not present that issue, so it would have been abstract to have instructed the jury to that effect. It is true that the instruction purported to cover the entire case, and should not have omitted any issue presented by the testimony. *Temple Cotton Co.* v. *Skinner*, 176 Ark. 17, 2 S. W. (2d) 676; *Dickerson* v. *St. Louis & San Francisco Ry. Co.*, 177 Ark. 136, 5 S.

W. (2d) 943. The instruction covered the entire case presented by the testimony when it submitted the issue of whether the signatures to the will were forgeries.

Appellants also contend for a reversal of the judgment upon the ground that the court told the jury, in instructions Nos. 5, 9 and 13, that the burden of proof was upon appellants. In cases involving the issues of insanity, incompetency and undue influence, this court has ruled that the burden rests upon the contestants of the will, when it appears upon its face to have been executed in accordance with the statutory requirements and when properly proved and probated. *McCulloch* v. *Campbell*, 49 Ark. 367, 5 S. W. 590; *Smith* v. *Boswell*, 93 Ark. 66, 124 S. W. 264; *Miller* v. *Carr*, 94 Ark. 176, 126 S. W. 1068. Section 10514 of Crawford & Moses' Digest provides that a will so proved, recorded, and signed by the clerk of the court of probate and attested by the seal of office, may be read as evidence, without any further proof thereof. In other words, when such a will is introduced, it makes a *prima facie* case which must be overcome by the proof introduced by the contestants of such a will. We are unable to see why the rule thus established, when the issues mentioned were involved, should not apply to issues of fraud and forgery as well. The Supreme Court of Nebraska, in the case of *Re O'Connor's Will*, 179 N. W. 401, seems to have decided otherwise, but we do not think the Nebraska case is in accord with the general rule. It is stated in Remsen on Preparation and Contest of Wills, page 385, that: "Where the issue is based on forgery, the line of contest is substantially the same as similar issues in general litigation."

In the cases of *McDonald* v. *McDonald*, 142 Ind. 55, 41 N. E. 336, and *Mears* v. *Mears*, 15 Ohio State 90, and *Behrens* v. *Behrens*, 47 Ohio State 323, 25 N. E. 209, 21 Am. St. Rep. 820, the rule is announced that contestants have the burden of proof under an allegation that the will was forged.

Appellants also contend for a reversal of the judgment because the court refused to give instruction No. 5, requested by them, to the effect that the intention of the alleged testatrix was entitled to no consideration in determining whether or not the purported will was properly executed. We think a will executed in accordance with the declared intention of a testator would be a very strong circumstance tending to show the genuineness of a will assailed on the ground that the signatures thereto were forgeries. We cannot think of a stronger circumstance tending to establish the genuineness of a will under such circumstances. The case of *Johnson* v. *Hinton*, 130 Ark. 394, 197 S. W. 706, cited by appellants in support of their contention on this point, is not applicable. In that case the issue was whether the will had been properly executed in accordance with the statutory requirements. Of course, the intention of a testator under such circumstances could have no effect. The testator, in order to give validity to his will, must execute his will in accordance with statutory requirements, irrespective of what his declared intention might or might not have been. The court did not err in refusing to give appellants' requested instruction No. 5.

Appellants also contend for a reversal of the judgment on the ground that the court erred in giving instruction No. 9 at appellee's request. Instruction No. 9, in part, is as follows:

"A number of witnesses have testified as experts upon the question as to whether or not the signature to the will is the signature of Fannie Nobles, deceased. Under the law, the opinions of expert witnesses are admissible in evidence, and are to be given such weight and value as the jury may think right and proper under the circumstances. The value of expert testimony depends not only upon the qualifications and experience of the witness, but upon the facts which he takes into consideration, and upon which he bases his opinion. If the facts assumed, and which are made the basis of the

opinion, are not established by the proof, then the opinion would have no basis upon which to rest, and would be of no value; and, in weighing such opinion, the jury must look to see whether the facts assumed are established by the proof or not; and you cannot take the facts assumed by the witness to be true simply because they are so assumed, but you will look to the proof to determine whether they are proved or not.''

It is argued that the instruction is an incorrect declaration of law applicable to the testimony of expert witnesses, because in the instant case the experts did not testify from an assumed state of facts, but from evidence admitted to be true.

Documents bearing the genuine signatures of the testatrix and Acklin were introduced in evidence and used by the experts as a basis for ascertaining whether the signatures on the will were forgeries. Their respective opinions were formulated by a comparison with the genuine signatures on the documents. It is true that the instruction was abstract in the sense that it told the jury that the facts as a basis for formulating opinions by expert witnesses must be proved in order to give value to their opinion, but we are unable to see how this harmed or prejudiced appellant. Reasonable intelligence must always be accorded to jurors, and, if that be done, certainly the jury was not induced by the instruction to give less weight to the opinions of the expert witnesses based upon admitted, rather than assumed, facts which have to be established by proof. The instruction is the one usually given when hypothetical questions are propounded to expert witnesses, and may be characterized as a slight misfit where the foundation facts are considered and not assumed, but it did not result in rendering the opinions of the expert witnesses less valuable' or prejudicial to appellants. We do not think the instruction was one on the weight of the evidence, as it applied alike to the opinions expressed by all the expert

witnesses testifying in the case. The instruction did not single out or emphasize the testimony of any particular expert witness.

No error appearing, the judgment is affirmed.